Thomas Alvord #14119
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Telephone: (385) 285-1090 ext. 30002
Email: thomas@lawhq.com

*Attorney for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
## AT SALT LAKE CITY

| | |
|---|---|
| ADRIAN JUCHAU and KARISSA KENNEY,<br><br>　　　Plaintiffs,<br><br>v.<br><br>FLUENT, INC., and DMS DE, INC.<br><br>　　　Defendants. | Case No. 2:21-cv-00551-RJS<br><br>**PROPOSED CLASS ACTION COMPLAINT**<br><br>JURY DEMANDED |

## INTRODUCTION

1.      Like most Utah residents, Adrian Juchau ("Adrian") and Karissa Kenney ("Karissa") have a mobile residential telephone.

2.      Being mobile, they take their phones everywhere they go. They use their phones to receive and make important calls, to get emergency information, and to receive and send text messages to family members and friends. They use their phones regularly for their personal enjoyment.

3.      Defendant Fluent, Inc. ("Fluent") is a marketing company that telemarkets using text messages.

4.      Defendant DMS DE, Inc., operating under the name Digital Media Solutions, ("DMS") sends text messages on behalf of Fluent under Fluent's control.

5.      Fluent knows that sending telemarketing text messages without consent is an invasion of people's privacy. On Fluent's own website it states: "[B]efore you start texting, the phone numbers you are contacting (and the people connected with them) must have been provided to you through compliance with the Telephone Consumer Protection Act. **Basically, you must have explicit consent!** A phone number, especially **a personal cell phone number, is private and precious** and you do not want to overstep that boundary." *Text Message and SMS Marketing: How It Works, Best Practices, and How to Use It*, https://www.fluentco.com/blog/sms-marketing-guide (last accessed September 14, 2021) (emphasis added).

6.      Despite this knowledge, Fluent and DMS blast millions of non-consenting individuals, including Plaintiffs, with automated telemarketing text messages in violation of the Telephone Consumer Protection Act ("TCPA").

7.      Fluent also knows that identifying the sender of the text message is critical. "Who are you and why are you texting me? That will be the first two questions on a consumer's mind…. Before diving into why you are texting them, **let them know your name**. Remember, **text message marketing is almost like knocking on someone's front door**." *Text Message and SMS Marketing: How It Works, Best Practices, and How to Use It*, https://www.fluentco.com/blog/ sms-marketing-guide (last accessed September 14, 2021) (emphasis added).

8.      But Fluent and DMS purposefully obscure and hide their identity when sending text messages in violation of the TCPA.

9.      Fluent's General Counsel and Chief Compliance Officer, Dan Barsky ("Barsky"), has testified that when Fluent runs telemarketing for some clients, Fluent knowingly will hide their true names so that it is difficult for recipients to find them and sue them.

10.     When individuals finally do discover that Fluent was the sender of a text messages with an undisclosed sender, and seeks information from Fluent about the messages, Fluent has responded with fabricated consent.

11.     Fluent has a long history of fabricating consents, even before Fluent sent the text messages to Adrian and Karissa.

12.     An investigation by the New York State Office of the Attorney General ("OAG") reveals that Fluent has falsified consents for years. Starting in 2016, Fluent has run political advocacy campaigns. In these campaigns, Fluent is supposed to solicit individuals' consent to submit advocacy messages to the government on their behalf. But the OAG found that Fluent never obtained consent from any individuals to submit a comment on their behalf. When initially probed about the purported consents, **Fluent fabricated timestamps and IP addresses trying to pretend that it had obtained consent**. The OAG found that Fluent was responsible for the submission of approximately ten million fake letters and public comments, all without consent.

13.     The OAG also found that Fluent fabricated alleged consent to receive email communications. Some clients required that Fluent include a checkbox in the creative through which consumers could subscribe to future email communications from the advocacy group sponsoring the campaign. Fluent employees created fake data showing that certain consumers had checked the box and agreed to join the mailing list, when in fact nobody had been show the checkbox. In one campaign, Fluent purposefully made it appear that 96% percentage of users had checked the box and opted-in while the remaining 4% had unchecked the box. Fluent did all this to give the appearance of consent, though none existed.

14.     This is the same complaint Adrian and Karissa have herein—they never gave any consent to Fluent. And when Adrian and Karissa complained to Fluent about the text messages and lack of consent, Fluent responded it had consent, when it did not.

15.     Fluent and DMS know that they are sending text messages to people who have not consented to receive them, but Fluent has done nothing to change its practices.

16.     Adrian, Karissa, and Class members who received texts from Fluent and DMS, have no relationship with Fluent or DMS, have no account with Fluent or DMS, have never provided their telephone numbers to Fluent or DMS, and have never consented to Fluent or DMS sending them any type of communication.

17.     Adrian, Karissa, and some Class members have tried to eliminate the harassment, invasion of their privacy and other damages from the unauthorized texts by registering their numbers on the National Do Not Call Registry ("DNCR"), but even that has not worked.

18.     Fluent and DMS simply continue to blast text messages to people in Utah without consent, without proper identifications, and without caring if the people are on the DNCR.

19.     These text messages have caused Adrian, Karissa, and the Class members frustration, stress, anxiety, and worry about scammers. The text messages hinder them from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause them to avoid looking at their phones when it may be important. The text messages reduce their phones' storage and battery life. In short, the text messages invade their privacy, dimmish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

20.     "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like the defendant in this case—who refuse to get that message while collectively

sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

21.     Because of Defendants' continuing violations of the law, Adrian and Karissa bring this action for themselves and for other similarly situated people in Utah to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

22.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

23.     This Court has personal jurisdiction over Defendants because their conduct intentionally targeted Plaintiffs, Utah residents, and others in Utah.

24.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the facts giving rise to this lawsuit occurred in this District.

## PARTIES

25.     Plaintiff Adrian Juchau is an individual and is a resident of Utah County, Utah.

26.     Plaintiff Karissa Kenney is an individual and is a resident of Utah County, Utah.

27.     Defendant Fluent, Inc. is a Delaware Corporation with its principal place of business in New York.

28.     Defendant DMS DE, Inc. is a Delaware Corporation with its principal place of business in Florida, operating under the name Digital Media Solutions.

## FACTUAL ALLEGATIONS

29.     Plaintiffs restate and reallege the allegations set forth above.

30.     Plaintiffs, and members of the Classes, have residential cellular telephones.

31.     Plaintiffs, and members of the Classes, have had their privacy and the use of their

phones invaded by the non-emergency telemarketing text messages from Fluent and DMS.

**Messages Sent by Fluent to Adrian**

32.     Adrian is the residential subscriber of the cell phone number 801-641-2622.

Adrian only uses this number for personal use and does not use it in any business.

33.     Adrian registered 801-641-2622 on the DNCR to stop telephone solicitations.

34.     Fluent sent at least eleven text messages to Adrian within a 12-month period.

Here are three examples:

> i.    Hi Lisa— I'm w/ Crēdĭt Nów-- Fix your credit AND maybe qualify for a
> $1500 credit line to buy the perfect Holiday presents-- Call NOW or type
> no to stop
> *- Sent December 17, 2018 from 530-503-9751*

> ii.   Hey Lisa; it's Amanda from Sāvè Aūtō. Auto insurance too pricey?
> Decrease it to as low as $29/mon. Call to learn how. TXT 'CANCEL' to end
> *- Sent January 14, 2019 from 801-783-5662*

> iii.  This is Lauren w/ Dêãls Tōdāy: Lisa; you are chosen to access to get a Free
> Smartphone! Call Now to claim your entry! txt "no thanks" to opt out.
> *- Sent January 28, 2019 from 469-281-7821*

35.     When Fluent sent the eleven text messages, Adrian's number 801-641-2622 was

registered on the DNCR.

36.     In the text messages, Fluent addresses Adrian by the name of "Lisa," yet Adrian

has never gone by or used the name Lisa.

**Messages Sent By Fluent and/or DMS to Karissa**

37.     Karissa is the residential subscriber of the cell phone number 801-787-9750.

Karissa only uses this number for personal use and does not use it in any business.

38.     Karissa registered 801-787-9750 on the DNCR to stop telephone solicitations.

39.     Fluent and/or DMS sent at least seven text messages to Karissa within a 12-month

period. Here are four examples:

      i.    Survey Voices MSG: FRANCES, thanks for taking our survey. You've been selected as a finalist for a 1k bonus deal! Act fast: https://erwds.us/LCGoKnxlZ Reply STOP to cancel
*- Sent July 7, 2019 from 83516*

      ii.   Sweeps Entry: FRANCES, your entry is accepted! AND you've been selected as a finalist for a 1k bonus deal. Take your pick: https://rwd-1.us/o8iXLKkbO Reply STOP to cancel
*- Sent July 7, 2019 from 83516*

      iii.  Frances, someone in UT zip code 84109 just claimed their $1,000 Walmart GC. http://r.survey.rocks/r/1nkl72a0j (CAC, reply stop to remove)
*- Sent July 9, 2019 from 53294*

      iv.  Winners in 84109 Confirmed, Frances! Check results here: http://r.survey.rocks/r/1nulxzo00 (CAC, reply stop to remove)
*- Sent July 13, 2019 from 53294*

40.     When Fluent and DMS sent the seven text messages, Karissa's number 801-787-9750 was registered on the DNCR.

41.     In the text messages, Fluent and DMS address Karissa by the name of "Frances," yet Karissa has never gone by or used the name Frances.

**Defendants Hide Their Identity**

42.     For over a year, Plaintiffs tried to identify who sent these text messages.

43.     The text messages do not disclose the name of the individual nor the name of the entity on whose behalf the text messages were sent.

44.     The few times Fluent included the name of an individual in the text message—such as "Amanda" or "Lauren"—it was simply to make the messages appear personal. These names, however, were made up and the text messages were not sent by people having those names. A search of Fluent's 186 employees on LinkedIn.com reveals no employees with the name Amanda or Lauren. *Fluent, Inc*, https://www.linkedin.com/company/fluentinc/people/?keywords=Amanda and https://www.linkedin.com/company/fluentinc/people/?keywords=lauren (last accessed September 7, 2021).

45.     To avoid detection, Fluent and DMS used dba entity names in the text messages such as CreditNow, SaveAuto, DealsToday, and CAC that make it impossible to identify who actually sent the text messages.

46.     Fluent and DMS purposefully do this to avoid detection and liability for illegal telemarketing.

47.     Adrian and Karissa received other texts which they believe came from Defendants due to the content, but which they have not yet been able to identify the sender because the message hides the identity of the sender.

**Fluent and DMS Sent the Text Messages**

48.     After more than a year of inquiry by Plaintiffs, Barsky admitted in an email that Fluent sent the above text messages to Adrian and Karissa.

49.     For the messages from Fluent short code 53294, Barsky shared that Fluent "authorized a publisher" to send the text messages to Karissa.

50.     Publishers are third parties that Fluent allows to send messages promoting Fluent's services. Fluent exercises substantial control over their publishers. This is partly based on the following statements from Barsky and Fluent:

     i.    Barsky has stated, "We have a very few publishers who we allow to send text promoting our sites" and "we don't have many pubs authorized to send texts."

     ii.    Fluent has said: "Fluent closely controls which publishers may send messages promoting it services."

     iii.    Fluent has said that "Fluent keeps careful records of which text-message campaigns it approves."

     iv.    And Barsky has stated that "In fact we don't allow texting without our express permission."

51.     Fluent's control over the publisher that sent the text messages from Fluent short code 53294 to Karissa, is further evidenced by the following facts:

    i.    The text message came from 53294, which according to the terms of service on Fluent's websites is one of Fluent's own SMS short codes.

    ii.    The text messages from 53294 all included the name "CAC" which is a dba of Fluent and was used by the sender of the texts.

    iii.    When Karissa responded stop to the text messages from 53294, she received an automated reply which said: "Samples and Savings: You are opted out and will receive no more msgs. For help, please call 855-276-5557." Samples and Savings is one of Fluent's wholly owned subsidiaries.

52.     Collectively, all of this demonstrates that Fluent gave express permission to one of its publishers, to send the text messages from 53294 to Karissa; Fluent closely controlled this publisher; Fluent provided the fabricated lead to this publisher; Fluent controlled this publisher to use Fluent's own text messaging system to send the text messages; Fluent controlled the publisher to have the text messages come from Fluent's own SMS short code; and Fluent controlled the publisher to use Fluent's dba in the messaging.

53.     Fluent is vicariously liable for the actions of this publisher.

54.     The evidence all points to Digital Media Solutions ("DMS") as the publisher who sent the text messages from 53294 to Karissa.

55.     The text messages from 53294 to Karissa contain the URL "survey.rocks," which is owned and controlled by DMS. Additionally, when clicking on the URLs in the text messages from 53294, they redirected to other webpages that are also owned and controlled by DMS.

**The Text Messages Are Telephone Solicitations and Constitute Telemarketing**

56.     The text messages are telephone solicitations and constitute telemarketing.

57.     The text message to Juchau encouraged him to get a personal loan and new insurance.

58.     The Free Smartphone, 1k bonus, and $1000 gift card set forth in the texts are not actually free or bonuses. Rather, Fluent and DMS offer those in return for consumers making purchases to earn them.

**The Text Messages Were Automated**

59.     Fluent and DMS sent the text messages to Adrian, Karissa, and Class members using an Automatic Telephone Dialing System ("ATDS"), and/or an artificial or prerecorded voice message. This is based on the following facts:

     i.    Many of the texts were sent from an SMS short code;

    ii.    The texts were sent from multiple phone numbers to prevent the numbers from being blocked;

   iii.    The texts used the incorrect name for Adrian and Karissa;

   iv.    Adrian and Karissa have no relationship with Fluent or DMS;

    v.    The texts were not in response to any action Adrian or Karissa had taken;

   vi.    The texts did not name the sender;

  vii.    The texts misspelled words and used accent marks in inexplicable ways and introduced unusual hyphenation (or lack thereof) between words, in an attempt to evade spam detection;

 viii.    The texts provided mechanical opt-out instructions, something ATDS's do;

   ix.    When replying to the text messages via SMS, no one responds;

    x.    Some of the text messages ask the recipient to call back, yet when calling back only a prerecorded voice plays;

xi.     The phone numbers spammed by Fluent appear to be randomly or
        sequentially produced not from information consentually provided to
        Fluent or DMS, but from bots, public data sources, or some other means;
        and

xii.    Barsky has stated that Fluent uses a relational database for its messaging
        system. Such databases use a sequential number generator (i.e. auto-
        increment) when storing data. This means Fluent's messaging system uses
        a sequential number generator to *store* the telephone numbers that Fluent
        and DMS texted.

### Defendants Had No Consent, Knew it, and Fluent Likely Fabricated Consents

60.     Adrian and Karissa did not provide their phone numbers to Fluent or DMS, have
never had a relationship with Fluent or DMS, and never gave permission to Fluent or DMS to
contact them in any way.

61.     Adrian and Karissa are not isolated incidents. Many people have reported spam
text messages from Fluent and Fluent's publishers. The text messages in these situations are also
addressed to the wrong person.

62.     In addition to what the New York OAG found regarding fabricated advocacy
consents, in a recent lawsuit involving a Fluent telemarketing campaign that occurred before the
texts were sent to Plaintiffs, Fluent's call logs revealed that in two months 226,434 people opted-
out of Fluent's messages, accounting for 28% of the phone numbers Fluent had contacted for that
campaign; hundreds of thousands of the entries on Fluent's lead lists were missing name and
address data; many people responded with complaints that Fluent had the wrong person and did
not have consent to be texting them; and there were over 100,000 duplicate records in which
entries created months apart repeated the exact same registration information—including typos,

misspellings, nonsense characters and the like—yet indicated they were from a different IP address or different city.

63.    Fluent knows the leads it uses do not have valid consents. DMS would have had knowledge of this as well.

64.    Defendants willfully sent the text messages in this case, even though Defendants knew that the leads were bad, the people had not consented, and many people were on the DNCR. Defendants did this while doing nothing to verify the leads or checking the DNCR registry.

### Plaintiffs Were Harmed and Damaged

65.    These text messages have caused Adrian, Karissa, and the Class members frustration, stress, anxiety, and worry about scammers. The text messages hinder them from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause them to avoid looking at their phones when it may be important. The text messages reduce their phones' storage and battery life. In short, the text messages invade their privacy, dimmish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

### Defendants Knew and Intended the Messages to be Received By Utah Residents

66.    Similar telemarketing text messages were sent to thousands of non-consenting people in Utah, many on the DNCR.

67.    When Fluent gave DMS the fabricated lead information for Karissa, the lead included location information that said the lead was located in Utah.

68.    When contacting Karissa, DMS knew that it was contacting people in Utah and purposefully directing text messages to Utah.

69.    Fluent knows the location of the people to whom it markets, including those in Utah as Fluent boasts it is a "data-driven" and "data-first" company with "proprietary first-party

data" of over 190 million consumers." *Publisher Spotlight Fluent*, https://impact.com/ partnerships/publisher-spotlight-fluent/ (last accessed August 7, 2021). See also *Investor Relations Home | Fluent, Inc.*, https://investors.fluentco.com (last accessed August 7, 2021). Fluent's data is not stagnant as Fluent "engage[s] with nearly 1 million US consumers" every day. Id.

70.     In one text message to Karissa, DMS stated: "someone in UT zip code 84109 just claimed their $1000 Walmart GC." This indicates that DMS and Fluent had just engaged with a consumer in Utah and DMS was sharing this information with Karissa because the zip code is nearby where Karissa lives.

71.     Further, the 801, 385, and 435 areas code used by Plaintiffs and the Class members are Utah area codes. As marketing companies and data companies, both Fluent and DMS would understand that based on the area codes and the addresses in the leads—absent other data to suggest otherwise—Adrian, Karissa, and the Class members live in Utah and the text messages sent to them would be received in Utah.

## LEGAL STANDARD

72.     The TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." *Strange v. T C N, Inc*., No. 4:18-CV-00058-DN, 2019 WL 1382287, at *3 (D. Utah Mar. 27, 2019).

73.     The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1).

74.    If the call "introduces an advertisement or constitutes telemarketing" then "prior express **written** consent" is required. 47 C.F.R. § 64.1200(a)(2) (emphasis added).

75.    Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c).

76.    The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

77.    The TCPA also prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d).

78.    Both phone calls and text messages qualify as a "call" under the TCPA. *Satterfield v. Simon Schuster,* 569 F.3d 946, 954 (9th Cir. 2009).

79.    Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

80.     "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014); see also *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019). Whether an agency relationship exists is ultimately a question of fact. See *United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020)

81.    The Supreme Court recently recognized again the invasion of privacy from these calls**.** "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'… In plain

English, the TCPA prohibited almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol.*

*Consultants, Inc*, 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020).

## CLASS ACTION ALLEGATIONS

82.    Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of themselves, and Classes of persons similarly situated, to

remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of

all those persons who have been harmed thereby, including injunctive relief.

83.    **Class Definitions.** Plaintiffs propose the following Classes:

**The Automated Calls Class**
All Utah residents with (1) telephone numbers having the Utah area code 801, 385 or
435, (2) who within four years prior to the filing of this action, (3) Fluent, or DMS for
Fluent, sent a text message to their cellular telephone, (4) using the same equipment or
type of equipment utilized to send text messages to Plaintiffs.

**The Do Not Call Class**
All Utah residents with (1) telephone numbers having the Utah area code 801, 385 or
435, (2) who within the four years prior to the filing of this action, (3) Fluent, or DMS for
Fluent, sent more than one telephone solicitation via text message within any 12-month
period, (4) to their residential cellular telephone number, (5) while listed on the national
Do Not Call Registry.

**The Failure To Identify Class**
All Utah residents with (1) phone numbers using the Utah area code 801, 385 or 435,
(2) who within four years prior to the filing of this action, (3) Fluent, or DMS for Fluent,
sent more than one telemarketing text message within any 12-month period, (4) to their
residential cellular telephone number, (5) where the text message did not disclose the
identity of the individual caller and the identity of the entity on whose behalf the call was
made.

84.     These text messages have caused the Class members frustration, stress, anxiety, and worry about scammers. The text messages hinder them from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause them to avoid looking at their phones when it may be important. The text messages reduce their phones' storage and battery life. In short, the text messages invade their privacy, dimmish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

85.     **Class Size.** The Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from Defendants' business records, and likely number in at least the thousands.

86.     **Adequacy.** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel competent and experienced in TCPA and class action litigation.

87.     **Common Questions of Law and Fact**. There are questions of law and fact common to the proposed Classes. These questions include, *inter alia*:

     i.    Did they receive a text from Fluent or DMS?

    ii.    Was the number called registered on the Do Not Call Registry?

   iii.    Did Fluent or DMS use an ATDS?

    iv.    Were the calls for an emergency purpose?

     v.    Did the text message properly identify the sender?

    vi.    Were Fluent and DMS's actions willful or knowing?

88.     **Typicality**. Plaintiffs' claims are typical of those of the Classes they seek to represent.

89.     **The nature of the notice to the proposed class**. Notice to the class will be provided by mail and possibly text messages.

90.     **Rule 23(b)(3) issues**. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action for violation of the TCPA are small. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above. Concentrating the litigation of the claims to this forum is desirable because Plaintiffs and the Class members are in Utah. Managing this case as a class action should have no significant difficulties and will likely present few difficulties because the scope of the class claims is narrowed to those with Utah area codes.

91.     **Rule 23(b)(2) issues.** Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, the telemarketing violations made by Defendants are likely to continue in the future if an injunction is not entered.

<u>**FIRST CAUSE OF ACTION**</u>
**Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)**
**(On Behalf of Plaintiffs and the Automated Calls Class)**

92.     Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference as though fully stated herein.

93.     Fluent's and DMS's use of an ATDS, artificial voice, or prerecorded voice to contact Plaintiffs and members of the Automated Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

94.     As a result of Fluent's and DMS's violations of 47 C.F.R. 64.1200(a), Plaintiffs and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

95.     Because Fluent and DMS knowingly and willfully violated 47 C.F.R. 64.1200(a), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

96.     Fluent is vicariously liable for the text messages sent by DMS.

97.     Plaintiffs and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Fluent and DMS from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without the prior express written consent of the called party.

**SECOND CAUSE OF ACTION**
**Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiffs and the Do Not Call Class)**

98.     Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference as though fully stated herein.

99.     Fluent and DMS's telephone solicitations via text message to the residential cellular telephones of Plaintiffs, and members of the Do Not Call Class, while on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

100.    As a result of Fluent and DMS's violation of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

101.    Because Fluent and DMS knowingly and willfully violated of 47 C.F.R. § 64.1200(c), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

102.    Fluent is vicariously liable for the text messages sent by DMS.

103.    Plaintiffs and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Fluent and DMS from sending telephone solicitations via text messages to phone numbers on the DNCR.

### THIRD CAUSE OF ACTION
**Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiffs and the Failure To Identify Class)**

104.    Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference as though fully stated herein.

105.    Fluent and DMS's sending of telemarketing text messages to the residential cellular telephones of Plaintiffs, and members of the Failure To Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

106.    As a result of Fluent and DMS's violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Failure To Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

107.    Because Fluent and DMS knowingly and willfully violated 47 C.F.R. § 64.1200(d), the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

108.    Fluent is vicariously liable for the text messages sent by DMS.

109.    Plaintiffs and members of the Failure To Identify Class are also entitled to and seek injunctive relief requiring Defendants to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

## RELIEF REQUESTED

Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendants:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiffs as class representatives;

C.      Appointment of the undersigned as counsel for the Classes;

D.      An order enjoining Defendants from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without the consent of the called party;

E.      An order enjoining Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR;

F.      An order requiring Defendants to disclose the actual name of the individual as well as the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing;

G.      An award of damages to Plaintiffs and the Classes, as allowed by law; and

H.      Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs request a jury trial as to all claims of the complaint so triable.

Dated September 22, 2021.

**LawHQ, LLC**

/s/ *Thomas Alvord*
Thomas Alvord

299 S. Main St. #1300
Salt Lake City, UT 84111
(385) 285-1090 ext. 30002
thomas@lawhq.com